**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TOMARA ALLEN PULLIAM, JR.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **Case No. 2:26-cv-00108** |
| **v.** | : | **Judge Douglas R. Cole** |
| | : | **Magistrate Judge S. Courter M. Shimeall** |
| | : | |
| **OFFICER M ROGERS, *et al.*,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff Tomara Allen Pulliam, Jr., proceeding without the assistance of counsel, brings this civil rights action under 42 U.S.C. § 1983 against Officer M. Rogers ("Officer Rogers"), an unknown supervising officer ("Supervising Officer"), and the City of Steubenville, Ohio (the "City"), arising from an encounter on November 1, 2025, in Steubenville, Ohio.  (ECF No. 4.) Plaintiff also has submitted a request to proceed *in forma pauperis*.  (ECF No. 9.)  The Court **GRANTS** Plaintiff's request to proceed *in forma pauperis*.  All judicial officers who render services in this action shall do so as if the costs had been prepaid.  28 U.S.C. § 1915(a).

Pursuant to 28 U.S.C. § 1915(e)(2), this matter is also before the Court for the initial screen of Plaintiff's First Amended Complaint (ECF No. 4).  The Court is required to identify cognizable claims and/or to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B).  Having performed the initial screen, as detailed below, the Undersigned finds that certain claims **MAY PROCEED** as it relates to Officer Rogers in his individual capacity only, but **RECOMMENDS** that Plaintiff's claims against the City and Supervising Officer be dismissed.

## I.     BACKGROUND

Plaintiff alleges that on November 1, 2025, he was present at his business located at 320 Market Street in Steubenville, Ohio, when Officer Rogers arrived without activating his lights or siren, shouted commands for Plaintiff to stop only after Plaintiff turned to enter the business, impeded Plaintiff's entry, physically redirected Plaintiff, and detained him without reasonable suspicion, probable cause, or lawful justification.  (*See* ECF No. 4, at PAGEID #: 11.)  Plaintiff further alleges that, despite posing no threat and offering no resistance, he was detained, transported to jail, processed, and handcuffed to a bench for an extended period, causing physical discomfort and emotional distress.  (*See id.*)

Plaintiff further alleges that his arrest was listed in the jail report, which publicly framed him as a criminal, and that loved ones and other members of the community became aware of his arrest, thereby causing Plaintiff humiliation and reputational harm.  (*See id.*)

Plaintiff also alleges that, during subsequent criminal proceedings, Officer Rogers testified falsely that Plaintiff refused to identify himself, although video evidence admitted at trial allegedly showed that Plaintiff provided his name and address and was physically redirected by Rogers. Plaintiff further alleges that he was found not guilty of obstruction but was convicted of driving an unsafe vehicle.  (*See id.*)  Plaintiff further alleges that the state-court judge adopted Officer Rogers's false narrative in the court's Judgment Entry.  (*See id.*)  Plaintiff alleges that Defendants' conduct caused and aggravated a pre-existing trauma-related psychological injury, as well as caused reputational harm and disruption of his family life and business operations.  (*Id.* at PAGEID #: 12.)

Plaintiff commenced this action on January 30, 2026, against Officer M. Rogers in his individual capacity, an unknown supervising officer, and the City of Steubenville.  (ECF No. 1.)

2

He filed the operative Amended Complaint on March 6, 2026, asserting that Defendants violated his Fourth and Fourteenth Amendment rights, as well as asserting state-law claims for False Imprisonment, Assault and Battery, Defamation/Libel, Intentional or Negligent Infliction of Emotional Distress, and Interference with Business Operations.  (ECF No. 4.)  He now seeks, among other things, compensatory and punitive damages, declaratory relief, injunctive relief (including remedial training/supervision and anti-retaliation measures), and attorney's fees.  (*Id.*)

## II.     LEGAL STANDARD

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, was enacted to allow a person of limited financial means to have access to the courts.  *See Denton v. Hernandez*, 504 U.S. 25, 31 (1992).  However, to prevent abuses of that leniency, the federal district courts must also review all *in forma pauperis* actions and dismiss any lawsuits or causes of action that the Court determines are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B); *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010).

To state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a).  *See also Hill*, 630 F.3d at 470–71 (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 8(a) "imposes legal and factual demands on the authors of complaints." *16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations," it does demand "more than [] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft*

3

*v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted). Thus, a complaint that asserts only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement" will be insufficient. *Id.* (cleaned up). Instead, to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* (citations and quotations omitted). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

Further, although the Court is to liberally construe *pro se* complaints "and hold such complaints to a less stringent standard than pleadings prepared by attorneys . . . this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting in part *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). The Court "should not have to guess at the nature of the claim asserted." *Wells*, 891 F.2d at 594. To that end, Rule 8 bars "a pleading party from 'cough[ing] up an unsightly hairball of factual and legal allegations, stepp[ing] to the side, and invit[ing] the defendants and the Court to pick through the mess and determine if plaintiffs may have pleaded a viable claim or two." *Hartzell v. Miami Cty. Incarceration Facility*, No. 3:17-CV-63, 2017 WL 2590199, at *2 (S.D. Ohio June 15, 2017) (quoting *Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1152 (D. Minn. 2011)).

Finally, "federal courts have an ongoing 'duty to consider their subject matter jurisdiction . . . and may raise the issue *sua sponte.*'" *Howard v. Good Samaritan Hosp.*, No. 1:21-CV-160, 2022 WL 92462, at *2 (S.D. Ohio Jan. 10, 2022) (quoting *Answers in Genesis of Kentucky, Inc. v.*

4

*Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009)).  Thus, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Id.* (citing Fed. R. Civ. P. 12(h)(3)).

### III.    ANALYSIS

### A.  Federal Claims

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)).  The Court will address each of Plaintiff's constitutional claims against each Defendant in turn.

#### 1.  Constitutional Claims against the City of Steubenville under *Monell*

Plaintiff has failed to plausibly allege a *Monell* claim against the City.  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Nichols v. Wayne Cty.*, 822 F. App'x 445, 448 (6th Cir. 2020) ("To state a municipal-liability claim under § 1983, the plaintiff must allege the deprivation (1) of a right secured by the Constitution or laws of the United States, (2) that was directly caused by a municipal policy or custom." (citing *Hardrick v. City of Detroit,* 876 F.3d 238, 243 (6th Cir. 2017))).  A plaintiff may prove an unconstitutional "policy" or "custom" by demonstrating "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision;

or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005)).  Moreover, to proceed under a failure-to-train theory, a plaintiff must allege: "(1) a 'pattern of similar constitutional violations by untrained employees' or (2) 'a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation.'"  *Helphenstine v. Lewis Cty.*, 60 F.4th 305, 323 (6th Cir. 2023) (quoting *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 738–39 (6th Cir. 2015)).  Further, whereas here, when a plaintiff is trying to rely on a single incident theory to show a failure to train, three additional elements must be met: "(1) that the [government entity's] training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Winkler v. Madison Cty.*, 893 F.3d 877, 902 (6th Cir. 2018) (internal quotations omitted).

Proceeding under a theory of failure to supervise has similar requirements. *See Bickerstaff v. Cuyahoga Cty.*, No. 1:18cv1142, 2020 WL 5626692, at *10 (N.D. Ohio Sept. 21, 2020) (to state a claim under a failure to supervise theory a plaintiff must show that "the government's policy or custom was representative of (1) a clear and persistent pattern of illegal activity, (2) which the [government] knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the [government's] custom was the cause of the deprivation of her constitutional rights" (internal citations and quotations omitted)).

Here, Plaintiff alleges in a purely conclusory manner that the constitutional violations he experienced were caused by the City's policies, practices, customs, or failure to train.  (*See* ECF No. 4, at PAGEID #: 14.)  Essentially, Plaintiff is asserting that every alleged act of constitutional

wrongdoing by a City employee was taken pursuant to a policy, practice, custom, or failure to train. (*See id.*) But other than stating that the City failed to train or supervise its officers on Fourth Amendment principles, Plaintiff provides no *facts* from which this Court could plausibly infer that the individual officer's alleged unlawful conduct was the result of a City custom or policy, or failure to train, as opposed to just misconduct of an individual. He points to no specific policy or custom, nor does he point to a clear and persistent pattern of illegal activity the City might have known about and to which it was somehow deliberately indifferent.

At most, Plaintiff has alleged one instance of one officer violating his constitutional rights. But as the Sixth Circuit has explained, one officer's failure to comply with a statute or rule is generally insufficient to show that the City was deliberately indifferent to a need to train or supervise its officers. *See Harvey v. Campbell Cty.*, 453 F. App'x 557, 567 (6th Cir. 2011) (explaining that deliberate indifference based on one violation of rights requires "a complete failure to train the police force," meaning "training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result"); *see also Shadrick*, 805 F.3d at 739 (finding a suit based on a single violation of rights available only in a "narrow range of circumstances" not present here, such as when it is "accompanied by a showing that [the government entity] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation" (cleaned up)). Moreover, the allegations here offer "only . . . bare legal conclusions which the Court properly disregards." *Freeman v. Spoljaric*, 667 F. Supp. 3d 636, 651 (S.D. Ohio 2023) (dismissing a claim for *Monell* liability due to conclusory allegations); *see also Assi v. Hanshaw*, 625 F. Supp. 3d 722, 750 (S.D. Ohio 2022) (dismissing a claim for *Monell* liability because it was "simply too conclusory to survive").

Accordingly, Plaintiff's *Monell* claim (Count IX) against the City should be dismissed.

2. <u>Constitutional Claims Against Unknown Supervising Officer John Doe</u>

Plaintiff's claims against the Supervising Officer likewise fail because § 1983 does not impose liability on supervisors under a respondeat-superior theory. "A supervisory official may not be held liable under 42 U.S.C. § 1983 for the alleged misconduct of subordinates unless 'the plaintiff demonstrates that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Anderson v. Mohr*, No. CV 2:15-CV-2798, 2015 WL 13730917, at *2 (S.D. Ohio Sept. 9, 2015), *report and recommendation adopted*, 2015 WL 7012799 (S.D. Ohio Nov. 12, 2015) (quoting in part *Combs v. Wilkinson*, 315 F.3d 548, 554 (6th Cir. 2002) (further citations and quotations omitted)); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (explaining that a plaintiff "must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct" (cleaned up)).  But in this case, other than alleging that this Defendant was a supervising officer on the scene, Plaintiff alleges no other facts against the Supervising Officer that would establish personal involvement.

As such, the constitutional claims against the Supervising Officer should be dismissed.

3. <u>Constitutional Claims Against Officer Rogers</u>

Plaintiff asserts two claims under the Fourth Amendment for unlawful seizure (Count I) and excessive force (Count II), as well as a Fourteenth Amendment claim for fabrication of evidence (Count III) against Officer Rogers in his individual capacity.

*a. Fourth Amendment Unlawful Seizure*

Plaintiff alleges that Officer Rogers unlawfully seized and detained him.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Torres v. Madrid*, 592

U.S. 306, 311 (2021). Thus, "[t]he ultimate touchstone" when evaluating claims under the Fourth Amendment "is reasonableness." *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (internal quotation marks and citations omitted). Arrests may be made without a warrant so long as the arresting officer has probable cause to believe that the suspect had committed a crime. *See*, *e.g.*, *United States v. Mitchell*, 457 F.2d 513, 514 (6th Cir. 1972) ("[T]he issue is simply whether under the circumstances of this case probable cause existed to permit an arrest without a warrant."). To plausibly allege a lack of probable cause for the arrest, a plaintiff must "plead facts about the circumstances of the interaction, so the Court can evaluate the objective facts known to the police officer at the time of the arrest or the search." *Bronson v. Martin*, No. 1:24-cv-77, 2025 WL 1141891, at *3 (S.D. Ohio Apr. 17, 2025). An officer's probable cause determination is necessarily based on "acts and circumstances *within an officer's knowledge at the time of an arrest.*" *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003) (citations omitted) (emphasis in original).

Here, Plaintiff alleges that Officer Rogers seized and detained him without reasonable suspicion, probable cause, or lawful justification. (*See* ECF No. 4, at PAGEID #: 12.) In support, he alleges that he was lawfully at his place of business when Officer Rogers arrived without activating his lights or sirens and did not address Plaintiff while he was facing him. (*See id.* at PAGEID #: 11.) Instead, Plaintiff alleges that once he turned away, Officer Rogers shouted at him to stop without providing a reason, impeded entry into his business, physically redirected Plaintiff, and did not provide a reason for his actions until after Plaintiff was detained. (*Id.*) Plaintiff alleges that he posed no threat and did not resist. (*Id.*) Accepted as true for purposes of the initial screen, the Undersigned will allow the Fourth Amendment unlawful seizure claim against Officer Rogers (Count I) to proceed at this juncture.

9

### b. *Fourth Amendment Excessive Force*

The Sixth Circuit instructs courts to "analyze claims that an officer used excessive force when arresting a person under the Fourth Amendment's 'objective reasonableness' standard." *Reed v. Campbell Cty.*, 80 F.4th 734, 747–48 (6th Cir. 2023) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (cleaned up)). Objective reasonableness is viewed "in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation." *Id.* (citations and quotations omitted). "Factors relevant to this inquiry include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Coffey v. Carroll*, 933 F.3d 577, 587 (6th Cir. 2019)).

Plaintiff's allegations underpinning this claim are less clear. But from what the Undersigned can discern, Plaintiff alleges that Officer Rogers "impeded Plaintiff's entry into the business and physically redirected him." (ECF No. 4, at PAGEID #: 11 ("Instance One").) The only other potential allegation that could support an excessive force claim would be his contention that he was "handcuffed to a bench for an extended period of time."[1] (*Id.* ("Instance Two").) In analyzing the allegations in conjunction with the factors articulated above, Plaintiff was arrested for relatively minor crimes (obstructing official business, a second-degree misdemeanor; and driving an unsafe vehicle, a minor misdemeanor traffic offense);[2] he alleges that he posed no threat; and likewise alleges that he did not resist arrest or otherwise attempt to evade. Thus, the

---

[1]Although Plaintiff does not allege that Officer Rogers was responsible for the handcuffing, in context and in the interest of liberal construction, the Undersigned will presume for the purposes of the initial screen that these allegations likewise apply to Officer Rogers.

[2] The Undersigned takes judicial notice of the official charges against Plaintiff reflected on the City of Steubenville Municipal Court Website, Case Numbers 25CRB00891-A (Obstructing Official Business, in violation of Ordinance Section 525.07) and 25TRD00730-A (Driving an Unsafe Vehicle in violation of Ordinance Section 337.01). *See Braunskill v. Agent Danielle Smith*, No. 1:24-cv-140, 2025 WL 1383401, at *3 n.5 (S.D. Ohio May 13, 2025) (taking judicial notice of online court records otherwise available to the public).

Undersigned will allow both instances of excessive force (Count II) to proceed against Officer Rogers at this juncture. *See Bowen v. Sidney Police Dep't*, 801 F. Supp. 3d 748, 759 (S.D. Ohio 2025) ("When a plaintiff alleges a police officer used excessive force in multiple instances, each instance is separately analyzed under the Fourth Amendment.").

c.  *Fourteenth Amendment Fabrication of Evidence*

As to this claim, Plaintiff alleges that Officer Rogers violated his Fourteenth Amendment rights by lying under oath at trial when Officer Rogers stated that Plaintiff refused to identify himself.

The Fourteenth Amendment prohibits "the government from depriving a person of liberty without due process of law." *See* U.S. Const. amend XIV, § 1.  The Sixth Circuit has found that this "due-process right is infringed when the prosecution presents 'evidence [that] is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury.'" *Clark v. Abdallah*, 131 F.4th 432, 447 (6th Cir. 2025) (quoting *Jackson v. City of Cleveland*, 925 F.3d 793, 815 (6th Cir. 2019)).

Here, Plaintiff alleges that Officer Rogers stated under oath at trial that Plaintiff refused to identify himself, despite video evidence introduced that directly contradicted that statement.  (*See* ECF No. 4, at PAGEID #: 11.)  Plaintiff further alleges that he was later found not guilty on the obstruction charge related to that testimony.  The Sixth Circuit, in *Anderson v. Knox Cty.*, No. 22-5280, 2023 WL 4536078, at *8 n.8 (6th Cir. July 13, 2023), left open the question of whether a plaintiff nevertheless has an independent and cognizable claim under the Fourteenth Amendment for fabrication of evidence after an acquittal.  Because Plaintiff was not convicted for the obstruction of official business claim for which he alleges evidence was fabricated, his claim here may be better construed as one asserted under the Fourth Amendment rather than the Fourteenth.

11

*See also Codrington v. Dolak*, 142 F.4th 884, 892 (6th Cir. 2025) ("Because [plaintiff] was never convicted of a crime based on the allegedly fabricated evidence but rather was arrested and charged with crimes based on such evidence, his § 1983 fabrication claim arises under the Fourth Amendment, not the Due Process Clause.").

If brought under the Fourth Amendment, Plaintiff must allege that "fabricated evidence [was] presented to a grand jury or to a judge determining probable cause." *Dolak*, 142 F.4th at 893); *see also See Tanner v. Walters*, 98 F.4th 726, 733–34 (6th Cir. 2024) ("Claims stemming from a plaintiff's seizure and continued detention based on purportedly false or fabricated evidence presented by law enforcement fall under the broad umbrella of malicious prosecution and are rooted in the protections afforded by the Fourth Amendment").

The Court need not weigh in at this time about whether the Fourth Amendment or Fourteenth Amendment presents the right vehicle for Plaintiff's claim on this point. For purposes of the initial screen, regardless of whether the claim is best characterized as arising under the Fourth or Fourteenth Amendment, Plaintiff has sufficiently challenged the circumstances surrounding his initial arrest such that the Undersigned will allow Plaintiff's fabrication-of-evidence claim (Count III) to proceed against Officer Rogers at this juncture—at least as things pertain to the initial screen.

## B. State Law Claims

Having addressed the federal claims, the Undersigned now turns to Plaintiff's state-law claims. As an initial matter, because it is recommended that all federal claims be dismissed against the City and Supervising Officer, it is further recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims as to these Defendants and dismiss such claims without prejudice. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 39 (2025)

12

("[W]ith any federal anchor gone, supplemental jurisdiction over the residual state claims disappears as well.").

Accordingly, the remainder of the state-law claim discussion pertains to Officer Rogers in his individual capacity. As discussed below, the Undersigned finds that Plaintiff's state-law assault and battery claim,[3] IIED claim, and defamation/libel claim may proceed. All other state-law claims should be dismissed.

    1.  <u>False Imprisonment</u>

Plaintiff's false imprisonment claim fails as a matter of law. "[T]he tort of false imprisonment concerns purely a matter between private persons for a private end, . . . [so] this Court has held that any [tort] claim for false imprisonment against a government actor must fail." *Stager*, 2024 WL 1556708, at *9 (quoting *Kareva v. United States*, 9 F. Supp. 3d 838, 845 (S.D. Ohio 2014)). Here, Officer Rogers is a state government actor, and the claim is brought against him in his individual capacity as a government actor, not a private person. As such, Plaintiff's false imprisonment claim (Count IV) should be dismissed with prejudice. *See id.* (dismissing false imprisonment claim against a government actor with prejudice because deficiency could not be cured).

    2.  <u>Assault and Battery</u>

Because Plaintiff's Fourth Amendment excessive force claim is permitted to proceed, the Undersigned likewise finds that his assault and battery claim (Count V) may also proceed at this time. *See Williams v. Collins*, No. 15-CV-337, 2017 WL 1196114, at *7 (S.D. Ohio Mar. 31, 2017) ("The Sixth Circuit has held that in the context of excessive force claims, state law claims

---

[3] Technically assault and battery are two distinct torts under Ohio law, but the Undersigned will address them together because it is recommended that they both proceed at this time. *See Stager v. Hanshaw*, No. 1:23-cv-120, 2024 WL 1556708, at *1 n.2 (S.D. Ohio Apr. 10, 2024).

for assault and battery 'rise and fall' with the federal excessive force claims." (citing *D'Agastino v. Warren*, 75 F. App'x 990, 995 (6th Cir. 2003))).

### 3. Defamation/Libel

Plaintiff's defamation claim may proceed at this juncture.  Ohio law defines "libel (written defamation) as 'a false and malicious publication made with the intent to injure a person's reputation or expose him to public hatred, contempt, ridicule, shame or disgrace, or to affect him adversely in his trade or profession.'" *Bennett v. Cisco Sys.*, 63 F. App'x 202, 207 (6th Cir. 2003) (quoting *Thomas H. Maloney & Sons, Inc. v. E.W. Scripps Co.,* 43 Ohio App. 2d 105, 107, 334 N.E.2d 494 (1974)).  "To state a defamation claim under Ohio law, whether libel or slander, the plaintiff must allege '(1) a false statement, (2) about the plaintiff, (3) was published without privilege to a third party, (4) with fault or at least negligence on the part of the defendant, and (5) the statement was either defamatory per se or caused special harm to the plaintiff.'" *Smith v. Sandusky Newspapers, Inc.*, No. 3:17CV1135, 2018 WL 1315155, at *6 (N.D. Ohio Mar. 14, 2018) (quoting *Savoy v. Univ. of Akron*, 2014-Ohio-3043, ¶18, 15 N.E.3d 430 (Ohio App.)).

As to this claim, Plaintiff alleges that he was listed in the jail report, "publicly framing him as a criminal" and that "loved ones and members of the community" became aware of his arrest, which caused him humiliation and reputational harm.  Ultimately, a key relevant fact here is whether the arrest, at the time it occurred, was supported by probable cause. *Cf. Shull v. Walgreen Co.*, 782 F. App'x 373, 377 (6th Cir. 2019) (finding that a plaintiff's state-law (albeit not Ohio) defamation claim related to an arrest failed when the officer established there was probable cause for his actions).  Accordingly, and out of an abundance of caution, Plaintiff's defamation/libel claim (Count VI) may proceed to allow the record to develop more fully on this issue.

14

    4.   <u>Intentional/Negligent Infliction of Emotional Distress</u>

Plaintiff may proceed on his intentional but not negligent infliction of emotional distress claim.

As an initial matter, under Ohio law, Plaintiff cannot proceed on his negligent infliction of emotional distress ("NIED") claim against Officer Rogers because "[a]n employee of a political subdivision is immune from liability for negligent acts or omissions." *Tuleta v. Med. Mut. of Ohio*, 2014-Ohio-396, ¶ 58, 6 N.E.3d 106, 119 (Ct. App.); *see also David v. Matter*, 2017-Ohio-7351, ¶ 15, 96 N.E.3d 1012, 1017 (Ct. App.) ("An allegation of mere negligence in the exercise of an officer's official duties would not support a claim of personal liability."). Thus, Plaintiff's NIED claims should be dismissed with prejudice. The Undersigned will review only Plaintiff's intentional infliction of emotional distress ("IIED") claim.

"An Ohio-law IIED claim has four elements: (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) that the conduct at issue was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) that the conduct was 'the proximate cause of [the] plaintiff's psychic injury; and (4) that the mental anguish suffered by [the] plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it." *Stager*, 2024 WL 1556708, at *9 (quotations omitted).

Here, because questions remain regarding the reasonableness (or lack thereof) concerning Officer Rogers's conduct, the Undersigned will permit Plaintiff's IIED claim (Count VII) to proceed at this juncture.

15

5.  Interference with Business Operations

Plaintiff's interference with business operations fails as a matter of law.  First, the Undersigned will construe this as a tortious interference with a business relationship claim under Ohio law.  *See Blue Train, Inc. v. City of Cleveland*, No. 1:25 CV 1950, 2026 WL 21278, at *5 (N.D. Ohio Jan. 5, 2026) (construing a wrongful interference with business operations claim as asserting a tortious interference with a business relationship claim).  As the *Blue Train* court explained: "[t]o prevail on this claim, plaintiff must establish: (1) the existence or the prospect of a business relationship; (2) that defendants knew of the relationship; (3) that defendants intentionally and materially interfered with the prospective relationship; (4) the interference was without justification; and (5) the interference caused plaintiff to suffer damages."  *Id.*  Here, Plaintiff's claim fails because there is no indication or allegation that Officer Rogers knew of the business relationship or intentionally or materially interfered with it.  Instead, at most, Plaintiff alleges that he was arrested outside of his business and that he stopped working "due to overwhelming fear and emotional distress related to the incident."  (ECF No. 4, at PAGEID #: 11–12.)  As such, this claim fails as a matter of law.  The Undersigned therefore recommends that Plaintiff's Interference with Business Operation claim (Count VIII) against Officer Rogers be dismissed without prejudice.

IV.  **CONCLUSION**

Based on the foregoing, the Undersigned **RECOMMENDS** as follows:

1. Plaintiff's federal claims against the City and Supervising Officer be **DISMISSED without prejudice**;
2. Plaintiff's state-law claims against the City and Supervising Officer be **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1367;
3. Plaintiff's state-law claim against Officer Rogers for false imprisonment (Count IV) be **DISMISSED with prejudice**; and

16

4. Plaintiff's state-law claim against Officer Rogers for Interference with Business Operations (Count VIII) be **dismissed without prejudice**.

It is further **ORDERED** that:

1. Plaintiff's Motion to Proceed *in forma pauperis* (ECF No. 9) is **GRANTED**;

2. Plaintiff **MAY PROCEED** with his federal claims against Officer Rogers in his individual capacity, as well as with his state-law claims for assault and battery (Count V), Defamation/Libel (Count VI), and IIED (Count VII);

3. If Plaintiff intends to have the United States Marshals effectuate service, he must submit a completed U.S. Marshal Form 285[4] within **THIRTY DAYS** of the date of this Report and Recommendation.  If Plaintiff does so, the Clerk is **DIRECTED** to issue the summons (ECF No. 4-2) as to Officer Rogers, and the United States Marshal is **DIRECTED** to serve by certified mail upon Defendant the issued summons and a copy of the Amended Complaint;

4. Plaintiff shall inform the Court promptly of any changes in his address during the pendency of this lawsuit.  Failure to do so could result in this case being dismissed under Federal Rule of Civil Procedure 41 for failure to prosecute; and

5. Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon Defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or counsel.  Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which

---

[4] A copy of this form is available on the Southern District of Ohio's Website, under Forms.  *See* https://www.ohsd.uscourts.gov/ohio-southern-district-forms.

objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

*/s/ S. Courter M. Shimeall*
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**

18